**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-16-1284-TaKuF |
| ) | BAP No. CC-16-1310-TaKuF |
| YAN SUI, ) | (consolidated appeals) |
| ) | BAP No. CC-16-1252-TaKuF |
| Debtor. ) | (related appeal) |
| _____ ) | |
| ) | Bk. No.   8:11-bk-20448-CB |
| YAN SUI; PEI-YU YANG, ) | |
| ) | Adv. No.   8:13-AP-01246-CB |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| RICHARD A. MARSHACK, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on May 18, 2017
at Pasadena, California

Filed – June 7, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

---

Appearances:   Appellant Yan Sui argued pro se; Edward Hays argued for appellee.

---

Before:   TAYLOR, KURTZ, and FARIS, Bankruptcy Judges.

---

     [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

## INTRODUCTION

Appellants Yan Sui and Pei-Yu Yang appeal from: an amended bankruptcy court order finding them in civil contempt and imposing sanctions; an order to show cause why they should not be sanctioned under the court's inherent authority; and the resulting order sanctioning them. They fail to adequately challenge the orders; they also failed to provide us with a critical transcript. We AFFIRM the bankruptcy court.

## FACTS[1]

These three appeals stem from an earlier decision by this Panel. In it, the Panel reversed in part, affirmed in part, and then vacated and remanded a sanctions order so the bankruptcy court could modify the amount of sanctions. Sui v. Marshack (In re Sui), BAP No. CC-15-1352-TaLKi, 2016 WL 3361646 (9th Cir. BAP June 6, 2016). We borrow liberally from that decision.

**Events leading to the earlier appeal** Prepetition, chapter 7[2] debtor Yan Sui transferred his interest in real property located in Costa Mesa, California (the "Property") to Pei-Yu Yang. Although the record is not clear, it appears that Ms. Yang was Debtor's wife, ex-wife, or domestic partner.

The Trustee promptly commenced an adversary proceeding solely against Ms. Yang and successfully obtained an order (the

---

[1]  We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding, the underlying bankruptcy case, and various appeals. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

"Avoidance Order") avoiding the transfer as a fraudulent conveyance pursuant to § 544 and California Civil Code § 3439. The Avoidance Order is now final.[3]

The Trustee then commenced a second adversary proceeding solely against Ms. Yang seeking to compel turnover, to allow a § 363 sale, and to surcharge Ms. Yang's interest in the Property. The Trustee eventually obtained a default judgment. The resulting order (the "Default Order") required immediate turnover of the Property by Ms. Yang and authorized the Trustee to sell the Property, including any interest held by Ms. Yang, free and clear of all interests. The Default Order is now final.[4] Appellants were subsequently evicted from the Property pursuant to a writ of assistance issued by the bankruptcy court.

Appellants then undertook a vigorous campaign to stymie the Trustee's efforts to market and sell the Property. First, they commenced an action in federal district court against the Trustee, his law firm, attorneys at his law firm, his special litigation counsel, the bankruptcy judge, the real estate company, and the real estate agent, among others; the complaint asserted 26 claims for relief. The district court action was

---

[3] After Ms. Yang appealed from the Avoidance Order, the Ninth Circuit affirmed. See Marshack v. Yang (In re Sui), 582 F. App'x 740 (9th Cir. June 14, 2014), cert. denied sub nom. Yang v. Marshack, 135 S. Ct. 869 (2014).

[4] Ms. Yang appealed from the Default Order, but the Panel dismissed this appeal as moot. See BAP No. 14-1498 Dkt. No. 33. The Ninth Circuit affirmed. Yang v. Marshack (In re Sui), --- F. App'x ---, 2017 WL 2199003 (9th Cir. May 18, 2017).

subsequently dismissed.[5]

Second, Appellants leveled a harassment and smear campaign against the estate's real estate professionals and the real estate company charged with marketing and selling the Property. This included a barrage of electronic messages sent to real estate agents via various online real estate platforms. The messages claimed that Appellants owned the Property and threatened to add agents for buyers and any prospective buyers to the district court action. Apparently, Appellants also filed complaints against the estate's real estate professionals with the California Commission of Real Estate, based on their purported failure to disclose to potential buyers that the Property was subject to litigation. And the Debtor posted several negative reviews of the estate's real estate agent and real estate company on Yelp.

In spite of Appellants' efforts to derail any sale, the Trustee obtained an order (the "Sale Order") approving a sale of the Property free and clear of all liens, claims, and interests pursuant to § 363(b) and (m). The Sale Order is now final.[6]

Understandably, given Appellants' antics, the Trustee moved for an order to show cause ("OSC") requiring Appellants to

---

[5] See 8:15-cv-00059-JAK-AJW (C.D. Cal.) Dkt. No. 50. Appellants appealed the dismissal to the Ninth Circuit, which affirmed. Sui v. Marshack, --- F. App'x ---, 2017 WL 2218992 (9th Cir. May 18, 2017).

[6] Debtor appealed from the Sale Order, which the Panel dismissed as moot. See BAP No. 15-1200 Dkt. No. 16. The Ninth Circuit affirmed. Sui v. Marshack (In re Sui), --- F. App'x ---, 2017 WL 2199001 (9th Cir. May 18, 2017).

4

explain why they should not be held in civil contempt for their actions. He asserted that Appellants had violated the Default Order by filing the district court action, representing in numerous electronic messages and internet postings that they owned the Property, and threatening to sue the real estate agent and the buyer in order to obstruct the sale. The Trustee sought compensatory damages for fees and costs incurred in defending the district court action, addressing Appellants' electronic correspondence and internet postings, and communicating with the buyer and his real estate agents regarding the threatened litigation and concerns about the sale.

At the hearing, the bankruptcy court agreed that an OSC was warranted and issued one; the OSC expanded the basis for civil contempt to include violations of the Sale Order.

Before the OSC issued, Appellants filed a document titled "Cause to Disobey and Appeal the Order Granting Motion of Marshack for Default Judgment; Cause to Disobey and Appeal From Order for Sale of The Property; Memorandum of P&A's in Support" ("Motion to Disobey"). They argued that the contempt proceeding lacked legitimacy because the bankruptcy court's orders — presumably, the Avoidance Order, the Default Order, and the Sale Order — were invalid. Appellants' Motion to Disobey was set for hearing concurrently with the hearing on the OSC. Appellants, however, never formally replied to the OSC.

Only the Trustee appeared at the OSC and Motion to Disobey hearings. The bankruptcy court stated on the record that it denied Appellants' Motion to Disobey and found Appellants in civil contempt. In its subsequent order (the "Contempt Order"),

5

the bankruptcy court reiterated its finding of civil contempt and imposed sanctions against Appellants in the collective amount of $93,832.72; the calculated sanctions included fees incurred by the Trustee's special litigation counsel in the district court action.  Appellants appealed.

**The Panel's decision in the earlier appeal**  The Panel affirmed in part, reversed in part, vacated the order, and remanded to the bankruptcy court for further proceedings. First, the Panel reversed the bankruptcy court's determination of civil contempt based on the Default Order because it did not require any action from Appellants and thus could not warn them of any consequences for violating the order.  It also concluded that the Default Order was directed solely to Ms. Yang; thus, Debtor could not violate it.  Second, the Panel affirmed the civil contempt determination based on the Sale Order.  That order, it reasoned, expressly directed Appellants to not take actions against the Property; and "[t]here also is no doubt that actions in violation of this order occurred."  Third, because "the majority of the sanctions awarded to the Trustee did not flow from the Sale Order," the Panel vacated the Contempt Order and remanded so the bankruptcy court could recalculate the sanction amount: "The Trustee is entitled to compensatory damages solely for fees and costs incurred in relation to Appellants' civil contempt after the entry of the Sale Order." Nevertheless, the Panel recognized "that Appellants' efforts to thwart the sale of the Property were egregious."  And it listed three possible sanctions theories and noted that the decision was "without prejudice to the Trustee's ability to seek

6

sanctions under another sanctions theory."

**Post-decision proceedings** The Trustee moved promptly and filed a new motion requesting: (1) entry of an amended order deeming Appellants in contempt; and (2) issuance of a new order to show cause why Appellants should not be sanctioned. He recalculated the amount of attorneys' fees to reflect those incurred after the Sale Order was entered: $31,174. Next, he argued that Appellants could be sanctioned under the bankruptcy court's inherent authority. The hearing was set for July 26, 2016.

Appellants opposed the Trustee's motion; the Trustee replied; and Appellants filed a sur-reply. The bankruptcy court heard the matter; Appellants did not appear.

On August 4, 2016, the bankruptcy court entered two orders. First, it entered an amended order finding Appellants in contempt and imposing sanctions against them in the collective amount of $31,174 (the "Amended Contempt Order"). Second, it issued another order to show cause why Appellants should not be sanctioned (the "Amended OSC"). In particular, the Amended OSC stated that Appellants' "pattern of obstructive and harassing conduct" has interfered with the Trustee's sale of the Property. AP Dkt. No. 259 at 2. This included: "continuously rehashing the same arguments in numerous pleadings filed with several courts"; "filing multiple, District Court lawsuits"; and "engaging in willful and vexatious conduct, including improper litigation tactics, resulting in substantial damage to the Estate . . . ." Id. Accordingly, the court ordered Appellants to personally appear at an August 30, 2016 hearing and show

7

cause "why they should not be sanctioned in the minimum amount of $62,251 under the Court's inherent authority for their efforts to thwart the sale of the Property." Id.

Appellants filed a written reply to the Amended OSC. Later, they timely appealed the Amended Contempt Order; they also appealed the Amended OSC.

The Trustee filed an opposition to Appellants' written reply. The bankruptcy court held a hearing on the Amended OSC; Appellants did not appear.

The bankruptcy court subsequently entered an order sanctioning Appellants (the "Second Sanctions Order"). As relevant here, the Second Sanctions Order states:

> After considering the Motion, the notice of Motion, all pleadings filed in response to the Motion, all pleadings filed in response to the OSC, all other pleadings and papers filed in this case, the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeal's memorandum of decision in Appeal No. CC-15-1352-TaLKi, the arguments of counsel on the record, and for the reasons set forth in the moving papers and as stated on the record, and with good cause shown . . . .

AP Dkt. No. 280 at 2. It found that Appellants' efforts to thwart the Trustee's sale of the Property constituted "bad faith, willful misconduct, vexatious conduct, and abuse of process." Id. And it imposed $62,251 in sanctions.

Appellants timely appealed the Second Sanctions Order. Later, the bankruptcy court would enter an amended sanctions order.

**Post-appeal proceedings** To clarify, Appellants appealed three orders with two notices of appeal: first, the Amended Sanctions Order and the Amended OSC; second, the Second

8

Sanctions Order. The BAP separated the first notice of appeal into two appeals: CC-1252 (Amended Sanctions Order); and CC-1284 (Amended OSC). Appellants' appeal of the Second Sanctions Order became CC-1310. On Appellants' motion, the BAP consolidated briefing for CC-1284 (Amended OSC) and CC-1310 (Second Sanctions Order). Because the three appeals stem from the Panel's earlier decision, we address them jointly.

On November 2, 2016, a BAP motions panel issued an order directing Appellants to provide transcripts of the July 26, 2016 and August 30, 2016 hearings. CC-16-1284, Dkt. No. 6 at 2. On November 15, 2016, Appellants filed a response stating that they attempted to obtain the necessary transcripts. Id. Dkt. No. 7.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion in finding Appellants in civil contempt and imposing sanctions.

Whether the bankruptcy court abused its discretion in sanctioning Appellants under its inherent authority.

## STANDARD OF REVIEW

We review an award of sanctions for an abuse of discretion. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1061 (9th Cir. 2009), abrogated on other grounds Gugliuzza v. FTC (In re Gugliuzza), 852 F.3d 884, 898 (9th Cir. 2017); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Rediger Inv. Servs. v. H. Granados Commc'ns, Inc.

9

(In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731 (9th Cir. BAP 2013).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

The previous Panel concluded that the Trustee could not recover the entirety of his fees based solely on a theory of civil contempt; on remand, the bankruptcy court awarded the Trustee the entirety of his fees, in part based on civil contempt and in part based on its inherent authority.

**A.    CC-16-1252: The bankruptcy court properly recalculated the amount of sanctions.**

Under § 105(a), the bankruptcy court may hold a party in civil contempt and impose compensatory or coercive sanctions. In re Dyer, 322 F.3d at 1189-90; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506-07 (9th Cir. 2002); Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 880 (9th Cir. BAP 2012). To find a party in civil contempt, the movant must prove "by clear and convincing evidence that the contemnor[] violated a specific and definite order of the court." In re Dyer, 322 F.3d at 1190-91. The bankruptcy court must also find that the contemnor "had

10

sufficient notice of [the order's] terms and the fact that he would be sanctioned if he did not comply." Hansbrough v. Birdsell (In re Hercules Enters., Inc.), 387 F.3d 1024, 1028 (9th Cir. 2004). Whether the contemnor violated a court order is not based on subjective beliefs or intent in complying with the order, "but [based on] whether in fact [the] conduct complied with the order at issue." In re Dyer, 322 F.3d at 1191 (citation omitted).

We affirmed the bankruptcy court's finding of contempt based on the Sale Order and remanded so it could calculate the amount of fees attributable to that contempt. On remand, the bankruptcy court imposed $31,174 in sanctions - the amount of the Trustee's attorneys' fees after entry of the Sale Order.

On appeal, Appellants raise a panoply of irrelevant issues. For instance, they contend that the Trustee is not entitled to be compensated; but the Panel already determined that compensatory sanctions were warranted. The only question for this appeal, then, is whether the bankruptcy court properly calculated the amount of the sanction. Appellants rightly observe that the fees must have been incurred after entry of the Sale Order. Appellants do not, however, identify particular billing line items that they disagree with; they did not include the Trustee's billing records in their excerpts of record. The Trustee did, and the $31,174 was all incurred after entry of the Sale Order. Appellants also argue that the Trustee is not entitled to fees until the appeals are concluded; but Appellants did not obtain a stay pending appeal.

More relevantly, Appellants first argue that many of the

11

Trustee's fees were incurred in opposing Debtor's motion to hold him in contempt of the discharge injunction. But as the Trustee points out, this opposition related directly to an attack on the sale of the property. Appellants indirectly admit as much in both their opening brief and in the underlying opposition to the Trustee's request for amended sanctions. In their opening brief, Appellants argue: the "BC sale order dishonored the discharge injunction"; and the "resultant sale order dishonors the discharge injunction as a logical result." Appellants' Opening Br. at 21, 24; id. at 21-24. In their underlying opposition, Appellants explained: "Sui's motion to hold Marshack et al[.] in contempt of the discharge injunction related to the eviction and not sale of the Property." AP Dkt. No. 247 at 17. The Sale Order, however, stated: "Neither Yan Sui nor Pei-yu Yang shall assert any lien, claim, or interest in the Property in violation of the free and clear provisions of this order." Debtor's contempt motion, then, was a collateral attack on the Sale Order. An appropriate compensatory sanction may include fees incurred in defending against this attack.

Second, Appellants argue that the fees were unnecessary because after June 4, 2015, "Sui/Yang did nothing at BC as to the sale order." Appellants' Opening Br. at 11. This is not persuasive; the Sale Order is enforceable beyond actions docketed with the bankruptcy court: Appellants' actions, even if not directly arising in the bankruptcy case, can subject them to contempt and form an appropriate basis for a compensatory sanction.

Third, Appellants also question Dentons US LLP's fees:

12

(1) they contend that the bankruptcy court did not address "the issue of the duplicative awarding after Dentons was awarded by DC for such fees[,]" id. at 11; (2) they argue that the Trustee has no standing to request Dentons' fees and that Dentons did not authorize him to request them, id. at 16-17; and (3) they urge that because Dentons was not involved in the adversary proceeding, the fees could not have been related to the Sale Order, id. at 17. These arguments are not convincing.

Dentons did not need to participate in the bankruptcy court proceedings for its work to be in furtherance of the Sale Order. The Trustee hired Dentons as special litigation counsel; the Trustee, the representative of the bankruptcy estate responsible for paying Dentons, could seek compensation for those fees as part of an appropriate compensatory sanction.

Also, although we acknowledge that the Panel's earlier decision stated that the bankruptcy court could address on remand Appellants' concern about duplicative fees, it is unclear what the bankruptcy court did in this regard. Appellants did not provide us a transcript of the relevant hearing on the matter. But, as the Trustee suggests, the relevant district court order awarding Dentons' fees to the Trustee provides that any payment on it should be applied "as a credit to what is determined in the Bankruptcy Proceedings to have been a parallel fee award made in the Bankruptcy Proceedings." 8:13-cv-01607-JAK-AJW, (C.D. Cal.) Dkt. No. 184 at 2. We cannot identify any duplication in payment on this record.

Fourth, Appellants contend that the imposed sanctions are not compensatory but are intended to punish; they also urge that

13

the sanction and contempt order were criminal in nature. They argue that the sanctions order "is a Joke" because bankruptcy sanctions "must follow the statute." Appellants' Opening Br. at 25. The Panel, however, already determined that the Trustee was entitled to compensatory fees and costs for Appellants' civil contempt of the Sale Order. On this record, we see no error; fees were awarded as an appropriate compensatory sanction.

Appellants' remaining arguments stray beyond the scope of the appeal. They seek to attack the underlying order despite the "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . ." United States v. Rylander, 460 U.S. 752, 756 (1983) (quoting Maggio v. Zeitz, 333 U.S. 56, 69 (1948)).

We affirm the Amended Sanctions Order.

**B.    CC-1284 & CC-1310: The bankruptcy court properly issued the Amended OSC and entered the Second Sanctions Order.**

The Amended OSC directed Appellants to show cause why they should not be sanctioned under the bankruptcy court's inherent authority. And bankruptcy courts have inherent authority to sanction bad faith or willful misconduct. In re Lehtinen, 564 F.3d at 1061; In re Dyer, 322 F.3d at 1196; Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996). But, before the bankruptcy court imposes sanctions under its inherent authority, it must find "recklessness or bad faith." Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998).

14

Appellants' first notice of appeal included the Amended OSC. But the Amended OSC was not a final, appealable order; it was an interim step toward further proceedings. See Plata v. Schwarzenegger, 560 F.3d 976, 980 (9th Cir. 2009) ("We agree with the Receiver that the October 27 Order is not final, but is rather an interim step toward further proceedings."). "A civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions." Id. (citing SEC v. Hickey, 322 F.3d 1123, 1127 (9th Cir. 2003)).

And, despite Appellants' host of contentions, the scope of this appeal is limited. In their opening brief, Appellants never question or dispute the amount of fees; they thus waived that issue on appeal. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief").

Also, the Second Sanctions Order and the amended second sanctions order both state:

> After considering the Motion, the notice of Motion, all pleadings filed in response to the Motion, all pleadings filed in response to the OSC, all other pleadings and papers filed in this case, the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeal's memorandum of decision in Appeal No. CC-15-1352-TaLKi, the arguments of counsel on the record, and for the reasons set forth in the moving papers **and as stated on the record**, and with good cause shown . . . .

AP Dkt. No. 280 at 2; AP Dkt. No. 287 at 2. If a bankruptcy court makes its findings of facts and conclusions of law on the record, the appellant must include the transcript as part of the

excerpts of record. McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 416-17 (9th Cir. BAP 1999). Here, Appellants did not do so. Nor can we find a copy of the transcript on the bankruptcy court's docket. We thus cannot meaningfully review the substance of the Second Sanctions Order.[7] Ehrenberg v. Cal. State Univ., Fullerton Found. (In re Beachport Entm't), 396 F.3d 1083, 1087-88 (9th Cir. 2005); Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1189 (9th Cir. 2003) (failing to provide a critical transcript may result in summary affirmance). To the extent Appellants question the bankruptcy court's legal reasoning and factual findings, their failure to provide us with transcripts prevents us from reviewing it, and we summarily affirm in part.

In particular, Appellants contend that the fees have no legal or factual basis (e.g., the order failed to explicitly find bad faith, Sui/Yang's acts should not be deemed bad faith). Putting aside that the order **does** explicitly find bad faith, see AP Dkt. No. 287 at 2 ("The Sui Litigants' efforts . . . constitute bad faith . . . ."), we cannot meaningfully review this argument because Appellants failed to provide us with the relevant transcript.

Appellants also point out some discrepancy between the

_____

[7] The Trustee filed a motion to dismiss or for summary affirmance because Appellants failed to provide an adequate record. A BAP motions panel took the matter under advisement for determination by the merits panel. As discussed below, we are able to review the Amended OSC and Second Sanctions order in part; we thus **grant** the Trustee's motion in part and **deny** it in part.

16

Second OSC and the Second Sanctions Order. They do not, however, argue that the differences mean anything; instead, they argue that none of the descriptive labels applied to them (e.g., they have continuously rehashed the same arguments, have engaged in willful and vexatious conduct, have harassed the Trustee, have impeded the orderly and expeditious disposition of the bankruptcy case, etc.) "is supported by fact or law." Appellants' Opening Br. at 21. They then discuss each point in depth. But, again, their failure to provide a transcript is dispositive.

On appeal, to the extent we can address arguments without the need for a transcript, we discern no error.

Appellants first contend that the Trustee improperly seeks to request "those tossed out fees without legal and factual support. Court provided Marshack opportunity to recalculate the fees after the date of 6/4/2015. Such providing does not itself mean that Court opened up a back door for his irrelevant fees." Appellants' Opening Br. at 7; id. at 6-7. Appellants misunderstand the Panel's earlier decision: it affirmed imposition of sanctions for fees incurred after entry of the Sale Order on June 4, 2015, and vacated the award of fees incurred before that date but without prejudice to the Trustee's right to seek them under an alternate sanctions theory. The Panel thus explicitly authorized the Trustee's renewal of a request for "those tossed out fees."

Next, Appellants argue that the bankruptcy court lacked jurisdiction over Ms. Yang: she did not file a chapter 7 bankruptcy; she did not file a claim; and the Trustee's first

17

adversary proceeding is invalid. We disagree. As discussed above, the Trustee commenced two adversary proceedings solely against Ms. Yang; he obtained orders against Ms. Yang; and at least one order has been affirmed on appeal. The bankruptcy court had sufficient jurisdiction to sanction Ms. Yang.

Appellants also suggest that their actions are not in bad faith because some of the bankruptcy court's other orders have been vacated, thus it "is more than likely that the Property should not have been sold . . . ." Id. at 30. But the Sale Order, which the Ninth Circuit recently affirmed, is not the subject of this appeal.

Appellants also repeat arguments from CC-16-1252 that we have already addressed: the Trustee's standing to seek Dentons' fees;[8] and the possibility of duplicative fees. And Appellants further contend that the fees should be "tossed out" for a variety of non-persuasive reasons.

Finally, Appellants argue that the sanction is punitive. Not so; the sanctions represent the Trustee's attorneys' fees. They are compensatory as is appropriate in the context of an inherent authority award of sanctions. See, e.g., Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178 (2017).

In sum, Appellants neither dispute the amount of fees nor provide us with the relevant transcript allowing appropriate

---

[8] Appellants move in this appeal to strike Dentons' joinder to the Trustee's reply brief; they repeat arguments that we have already addressed and raise new, perplexing assertions (e.g., "Dentons joinder is . . . . an aggravated robbery on top of the existing one."). Dentons has an interest in this appeal; we accordingly **deny** Appellants' motion.

18

review of the bankruptcy court's analysis nor assert any otherwise adequate basis for a determination of error.

**CONCLUSION**

We AFFIRM.